IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA WOLOSKY, | : Civil Action No. 2:14-cv-00804-NBF |
| Plaintiff, | : |
| vs. | : JURY TRIAL DEMANDED |
| TRINITY AREA SCHOOL DISTRICT, PAUL KASUNICH, AMY MCTIGHE, | : |
| Defendants. | : |

**Defendant's Reply to Plaintiffs' Notice of Supplemental Authority in Support of Plaintiff's Response in Opposition to Defendants' Motion to Dismiss**

Defendants Trinity Area School District, Dr. Paul Kasunich, and Amy McTighe (collectively, "Defendants") by and through their attorneys, John Smart, Esquire and the law firm of Andrews & Price, LLC file the following Reply to Plaintiff's Notice of Supplemental Authority in Support of Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Notice"). Defendants incorporate the arguments raised in the Brief in Support of their Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) [Doc 7].

## ARGUMENT

### The Cat's Paw Theory is Inapplicable to Plaintiff's Claims

Plaintiff's Notice raises a new theory of vicarious liability for Defendant Trinity Area School District ("the District") centered on the actions of Defendant Amy McTighe ("McTighe"). The Notice does not appear to advance any new theories or authority to support the aiding and abetting claim against McTighe. The Defendants maintain that binding Supreme Court precedent in *Vance v. Ball State University*, 133 S.Ct. 2434 (2013) clearly defines the limitation of liability for nonsupervisory employees, such as McTighe, who was merely a six-month contract employee of the District. Therefore, as advocated in Defendants' Motion to

Dismiss, the claim against McTighe must be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff has consistently argued that McTighe was a supervisor and/or in a position of authority over Plaintiff. [Docs 14 and 15]. Plaintiff now contends that the actions of a *non-supervisory employee* support a claim for vicarious "cat's paw" liability against the District. [Doc. 15]. Plaintiff argues that new authority supports this theory of liability. *Id.*

The cat's paw theory was first introduced by Judge Posner in *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) and was recently discussed by the United States District Court for the Eastern District of Pennsylvania in *Burlington v. News Corp.*, __F.Supp. 3d__, 2014 WL 5410062 (E.D. Pa. Oct. 24, 2014). This theory of liability is not new, and does not support Plaintiff's claims against McTighe or the District.

Foremost, in the fourteen-year-old case of *Shager v. Upjohn Co.*, Judge Posner opined about cat's paw liability, providing that:

> [if an employee], acting within (even if at the same time abusing) his authority as district manager to evaluate and make recommendations concerning his subordinates, had procured [the Plaintiff's] discharge because of his age . . . . [T]he district manager would have violated the [Age Discrimination in Employment Act], and his violation would be imputed to his [employer].

*Shager*, 913 F.2d at 405.

Several years after *Shager*, the United States Court of Appeals for the Third Circuit acknowledged:

> Some courts have held that an innocent employer who relied on a biased subordinate may be liable for retaliation under Title VII or the CEPA. *See, e.g.,* [*Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 552 (2000)] ("the jury could have inferred from the evidence that in deciding to terminate plaintiff, [the employer] relied on a 'tainted' evaluation prepared by [his subordinate]."); *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) ("If the employee can demonstrate that others had influence or leverage over the official

1

decisionmaker, . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker.").

*Caver v. City of Trenton*, 420 F.3d 243, 257 (3d Cir. 2005).

In the non-precedential case now relied on by Plaintiff, the court decided that an employee's bias may be attributed to an employer, whether or not the employee is a supervisor or a subordinate. *Burlington*, 2014 WL 5410062, at *12. Thus, *Burlington* is not entirely new authority on this issue, especially not in the Third Circuit. However, to the extent the case post-dates the U.S. Supreme Court decisions in *Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011) and *Vance v. Ball State University*, 133 S.Ct. 2434 (2013) such that this Court may deem it to be new authority, the Defendants will address Plaintiff's arguments accordingly.

Foremost, the cat's paw theory of liability typically applies when a member of a protected class is subjected to an adverse employment action by a decision maker who is free of discriminatory animus, but whose actions were influenced by a biased employee. *Burlington*, 2014 WL 5410062, at *6. The *Burlington* court found that an employee's bias may be attributed to an employer under certain conditions, whether or not the employee is a supervisor or a subordinate. *Burlington*, 2014 WL 5410062, at *12. To be clear, the court did not hold that a subordinate employee herself could be found liable. *Id*. at *1 -*16.

In *Burlington*, the court sought to predict how the Supreme Court of the United States would address the issue of whether the acts of nonsupervisory coworkers, on a cat's paw theory of liability, could impute liability to an employer. *Id.* In its analysis, the court analyzed the Supreme Court's decisions in *Staub*, 131 S. Ct. at 1186[1] and *Vance*, 133 S.Ct. at 2434. *Id.*

The *Staub* Court applied the principals of agency and tort law to conclude that a supervisor's unlawful discrimination was a proximate cause of the ultimate employment decision

---

[1] In *Burlington*, the court found that the cat's paw liability analysis in *Staub* applies to Title VII cases. *Burlington*, 2014 WL 5410062, at *8 (collecting cases).

2

suffered by Plaintiff; and therefore, the employer was vicariously liable under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S. §§ 4301, *et seq*. The Court wrote as dictum:

> We express no view as to whether the employer would be liable if a co-worker, rather than a supervisor, committed a discriminatory act that influenced the ultimate employment decision.

*Staub*, 131 S.Ct. at 1194 n. 4 (citations omitted).

Thereafter "*Vance* answered the question of who qualifies as a 'supervisor' for purposes of harassment claims under Title VII." *Burlington*, 2014 WL 5410062, at *9. In *Vance*, the Supreme Court affirmed, for purposes of vicarious liability under Title VII, that an employee is a supervisor if empowered to take tangible employment actions. *Vance*, 133 S.Ct. 2435.

To reconcile *Staub* and *Vance*,[2] the *Burlington* court turned to the underpinnings of the Supreme Court's Title VII decisions and the Restatement (Second) of Agency. *Burlington*, 2014 WL 5410062, at *10 -*11. The court concluded that employer liability is appropriate "on a cat's paw theory where a biased employee acts *outside the scope of her employment* and either (1) the employer was negligent or reckless, or (2) the biased employee was aided in the accomplishment of the tort by the existence of the agency relationship." *Id.* at *12 (emphasis added) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758-763 (1998)). The court concluded:

> This approach is consistent with *Vance's* suggestion that an employer can delegate the power to take tangible employment actions to nonsupervisory employees so that the employer could be vicariously liable for the employees' actions. Such delegation falls within the aided in the agency relationship exception of [Restatement] § 219(2)(d) so that *it would be reasonable to hold the employer liable* for the actions a nonsupervisory coworker to whom such authority is delegated.

*Id.* (emphasis added).

---

[2] The holdings of *Staub* and *Vance* appeared to eliminate the availability of cat's paw liability for employers whose supervisors (without discriminatory animus) are influenced by non-decisionmaking employees (with discriminatory animus) to make discriminatory decisions that lead to an adverse employment action.

3

Thus, it is clear that the *Burlington* court decided that an employee's bias can be attributed to an employer, whether or not the employee is a supervisor or a subordinate. The court never concluded that the subordinate employee herself could be found liable. Furthermore, the Court established specific requirements for holding an employer liable under this theory, which Plaintiff has failed to allege.

In the case at bar, not only did Plaintiff fail to allege sufficient facts to support that McTighe was a supervisor, Plaintiff failed to allege that McTighe was biased or acted in a discriminatory manner. *See* arguments raised in [Doc 7]. Plaintiff only alleged that McTighe acted within the scope of her employment and took direction from then Superintendent Dr. Paul Kasunich ("Dr. Kasunich"). Plaintiff acknowledged this fact in her Response to Defendants' Motion to Dismiss [Doc 14]. Therefore, Plaintiff has not established the prima facie elements for cat's paw liability, namely that McTighe performed an act motivated by discriminatory animus with an intent to cause an adverse employment action against Plaintiff, and which was the proximate cause of the adverse action ultimately taken by a decision maker. *See Burlington*, 2014 WL 5410062, at *14-*15. Furthermore, Plaintiff has not alleged sufficient facts so support that the District acted negligently by allowing McTighe to act in an alleged discriminatory manner or that McTighe's took intentionally discriminatory actions that were aided by the existence of her relationship with the District. *Id.*

Plaintiff specifically provided that that McTighe reported to Dr. Kasunich. *See* [Doc 14] at p. 4 (citing Complaint at ¶¶ 12, 155, 191, 222, 232, 241). Plaintiff also alleged that McTighe "assumed Dr. Wolosky's responsibilities", but only cited paragraphs of her Complaint alleging that McTighe met and took direction from Dr. Kasunich. *Id.* (citing Complaint at ¶¶156, 239, 243, 247). Plaintiff also argued that McTighe made "suggestions," which Plaintiff attempted to

4

characterize as "orders that Dr. Wolosky was required to follow." *Id.* (citing Complaint ¶255 and attempting to insert new allegations outside of the Complaint via footnote 4).

Despite Plaintiff and/or her attorney's attempt to skew the facts raised in her own Complaint, it is clear that Plaintiff did not adequately allege any plausible facts to support that McTighe was a supervisor and harbored discriminatory animus towards Plaintiff, which influenced a decisionmaker to take an adverse employment action against her. If anything, Plaintiff has alleged that Dr. Kasunich influenced McTighe to take actions, which Plaintiff has alleged were discriminatory. *See* Complaint [Doc. 1].

## CONCLUSION

The facts pled by Plaintiff, even in light of her Notice of Supplemental Authority, fail to allege plausible claims against McTighe or a claim for vicarious liability on the part of the District for the alleged actions of McTighe. It is clear that McTighe was not Plaintiff's supervisor and did not have any ability to stop the alleged discriminatory actions taken by Superintendent Dr. Kasunich, nor would this be sufficient under *Burlington* to support a theory of vicarious liability against the District. Only the reverse would be true. According to Plaintiff, McTighe took direction from Dr. Kasunich at all times relevant hereto. Furthermore, as six-month contract employee, it is not plausible that McTighe engaged in conduct that furthered the District's discrimination and retaliation against Plaintiff. Plaintiff simply failed to allege plausible facts to establish any supervisory authority or individual liability for McTighe. Therefore, Defendants' Motion to Dismiss must be granted.

Respectfully submitted,

ANDREWS & PRICE

By: /s/ Amie A. Thompson
    Amie A. Thompson, Esq.
    PA I.D. # 309345
    Firm #549
    1500 Ardmore Boulevard, Suite 506
    Pittsburgh, PA 15221
    (412) 243-9700

    Attorneys for Defendants